IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 15-cv-02788-RBJ

HELEN WIXOM on behalf of Kenneth M. Wixom,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

ORDER

This matter is before the Court on review of the Commissioner's decision denying deceased claimant Kenneth M. Wixom's application for Disability Insurance Benefits ("DIB"). Jurisdiction is proper under 42 U.S.C. § 405(g). For the reasons explained below, the Court AFFIRMS the Commissioner's decision.

## I. STANDARD OF REVIEW

This appeal is based upon the administrative record and the parties' briefs. In reviewing a final decision by the Commissioner, the role of the District Court is to examine the record and determine whether it "contains substantial evidence to support the [Commissioner's] decision and whether the [Commissioner] applied the correct legal standards." *Rickets v. Apfel*, 16 F. Supp. 2d 1280, 1287 (D. Colo. 1998). A decision cannot be based on substantial evidence if it is "overwhelmed by other evidence in the record." *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir.

1988). Substantial evidence requires "more than a scintilla, but less than a preponderance." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Evidence is not substantial if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Regarding the application of the law, "reversal may be appropriate when the [Social Security Administration] Commissioner either applies an incorrect legal standard or fails to demonstrate reliance on the correct legal standards." *Springer v. Astrue*, No. 11-cv-02606, 2013 WL 491923, at *5 (D. Colo. Feb. 7, 2013) (internal citation omitted).

## II. BACKGROUND

Mr. Wixom was born on August 24, 1964, but tragically passed away in a motor vehicle accident on March 28th, 2015. R. 28, 36. Before his death, Mr. Wixom resided in Peyton, Colorado. R. 144. He held a B.S. in engineering. R. 41. His past employment included work as a maintenance mechanic, an operations manager, and an installer in the telecommunications industry. R. 27. He had not held substantial gainful employment from 2008 until his untimely death. R. 41, 144.

Before he passed away, Mr. Wixom had a long history of chronic pain. R. 24. His relevant medical history begins in August 2010 when Mr. Wixom reported that he had an ongoing back condition. R. 24, 206–225. Medical tests confirmed in October of 2010 that Mr. Wixom displayed signs of early degenerative disc disease, although without significant canal or foraminal stenosis. *Id.* Mr. Wixom subsequently received steroid injections, which allegedly improved some of his symptoms. *Id.* As a result, he did not subsequently receive additional care from his treating physician, Dr. Scott Ross, until May 30, 2012. *Id.*; R. 280. At that time, he

received a radiofrequency rhizotomy. *Id.* He was subsequently "discharged in excellent condition." *Id.*

Mr. Wixom nevertheless reported that his pain had returned a month later. R. 278. He subsequently received additional injections to help him cope with the pain throughout the remainder of the year. *See* R. 270–78. The following March, Mr. Wixom reported an "intensification of his pain." R. 269. Two months later in May of 2013 Mr. Wixom received additional injections that improved this back pain, although he soon began to report right shoulder pain radiating from his neck. R. 264–66. Imaging he would later receive revealed "severe, left-sided facet arthropathy and mild uncovertebral spurring" that resulted in "severe left-sided foraminal stenosis" in addition to other conditions. R. 24–25, 263.

Discovery of these left-sided conditions, however, would not provide Mr. Wixom any answers about his new complaints of pain on his right side. *See id.* Thus, later the next month Mr. Wixom received a nerve conduction study and electromyography. *See* R. 259. This occurred on June 13, 2013. *Id.* It confirmed that Mr. Wixom did not have "a right cervical radiculopathy, plexopathy, or more diffuse large fiber peripheral neuropathy[,]" but showed evidence of "ulnar neuropathy at the right elbow . . . [and] a mild median neuropathy at the right wrist." R. 259. Several more tests completed the next year (after Mr. Wixom's date last insured) showed that his condition remained relatively unchanged. R. 25.

**A. Procedural History.**

On September 9, 2013 Mr. Wixom applied for disability insurance benefits, alleging disability beginning August 15, 2008, later amended to May 20, 2012. R. 122. The claim was initially denied on January 24, 2014. R. 59. Mr. Wixom then requested a hearing, which was set

to be held on May 14, 2015. R. 82–88. Prior to that hearing, however, Mr. Wixom passed away on March 28, 2015. R. 120–21. Mr. Wixom's widow, Helen Wixom, subsequently became a substitute party to Mr. Wixom's claim, *id.*, and appeared in his place at the originally-scheduled hearing, R. 34–58. That hearing was held before Administrative Law Judge ("ALJ") Kathryn D. Burgchardt. *Id.* She issued a decision denying Mr. Wixom benefits on June 26, 2015. R. 17.

Mrs. Wixom appealed that adverse decision to the Appeals Council on July 27, 2015. R. 15. Before the Appeals Council issued its ruling, Mrs. Wixom sent the Council two additional pieces of evidence: (1) an affidavit; and (2) a letter by Dr. Ross, in which he affirms the findings compiled in a March 25, 2015 medical assessment of Mr. Wixom by Dr. Thomas Higginbotham. R. 8–12. Nevertheless, on October 30, 2015 the Appeals Council rejected that additional evidence as immaterial and denied Mrs. Wixom's request for review. R. 1. Mrs. Wixom timely filed an appeal in this Court. ECF No. 1.

### B. The ALJ's Decision.

The ALJ issued an unfavorable opinion after evaluating the evidence according to the Social Security Administration's standard five-step process. R. 17–33. First, she found that Mr. Wixom had not engaged in substantial gainful activity since his amended, alleged onset date of May 30, 2012 through his date last insured of December 31, 2013. R. 22. At step two, the ALJ found that Mr. Wixom had the following severe impairments: disorder of the lumbar spine, disorder of the cervical spine beginning on May 14, 2012, and right cubital tunnel syndrome beginning on June 13, 2013. R. 22. At step three, the ALJ found that Mr. Wixom did not have an impairment or combination of impairments that met the severity of a condition listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 23.

The ALJ then found that Mr. Wixom retained the residual functional capacity ("RFC") to perform light work involving lifting or carrying up to 10 pounds frequently and 20 pounds occasionally. *Id*. The ALJ also found that Mr. Wixom could perform work requiring him to stand or walk, with normal breaks, for a total of six hours a day, and could sit for five hours a day. *Id*. Though Mr. Wixom complained of arm, shoulder, neck, and back pain, the ALJ found that Mr. Wixom could perform certain pulling and pushing activating with weight restrictions, but should avoid those activities with his right arm and shoulder. R. 23–27. At step four, the ALJ concluded that Mr. Wixom was unable to perform any of his past relevant work. R. 27. Finally, at step five, the ALJ determined that Mr. Wixom had nevertheless acquired work skills from his past relevant work that were transferable to other occupations that existed in significant numbers in the national economy. R. 28. Therefore, the ALJ concluded that Mr. Wixom was not under a disability from May 30, 2012 (his amended, alleged onset date) through December 31, 2013 (the date last insured). R. 29.

### III. ANALYSIS

Mrs. Wixom raises three arguments on appeal. First, she contends that the ALJ's RFC determination lacks substantial evidence. ECF No. 14 at 6–10. Second, plaintiff contends that the ALJ's credibility determination of Mr. Wixom was also in error. *Id.* at 10–12. Finally, plaintiff contends that the Appeals Council improperly rejected qualifying new evidence. ECF No. 17 at 1–2. Finding substantial evidence supports both the ALJ's RFC and credibility determinations, and that the Appeals Council properly rejected as immaterial the additional evidence Mrs. Wixom submitted, I affirm the Commissioner's decision. I address each issue in turn.

### A. The ALJ's RFC Determination.

The ALJ determined that Mr. Wixom "had the residual functional capacity to perform light work" with certain limitations. R. 23. Mrs. Wixom raises three reasons why she believes substantial evidence does not support this conclusion. First, she argues that the ALJ failed to cite any particular medical provider or evidence in support of that RFC. ECF No. 14 at 7. Second, Mrs. Wixom contends that the ALJ improperly dismissed Dr. Thomas Higginbotham's medical evaluation of Mr. Wixom, completed in 2015. *Id.* at 7–9. Finally, she argues that Dr. Scott Ross' report, which Mrs. Wixom submitted to the Appeals Council after the ALJ rendered her decision, undermines the ALJ's determination. *Id.* at 9–10. Reserving discussion on Mrs. Wixom's final argument for Part III.C, see *infra*, I find Mrs. Wixom's first two arguments unconvincing.

First, I find Mrs. Wixom's contention that the ALJ failed to "cite or rely on any particular medical provider or evidence" is simply untrue. *See* ECF No. 14 at 7. The ALJ specifically cited the findings of Dr. Ross, those of Patrick Devanny, M.D., and those of Katharine Leppard, M.D. in determining that Mr. Wixom could perform a range of light work with certain limitations.[1] R. 25–26, 206–225, 242–297, 350–352. Furthermore, to the extent Mrs. Wixom argues that the ALJ was required to cite a specific medical provider's RFC opinion in crafting her own, I point out that no such requirement exists. *See Howard v. Barnhart*, 379 F.3d 945, 949

---

[1] The ALJ also analyzed Mr. Wixom's treatment history, his clinical examination findings, and the other evidence of his symptoms in making her RFC determination. *See* R. 23–27. Much of this evidence revealed that Mr. Wixom's strength was quite normal during the time he claimed disability. *See, e.g.*, 243–44 (noting on July 24, 2013 that an exam of Mr. Wixom's shoulder showed "no swelling" and "no abnormality[,]" and that any syndromes he had were "mild").

(10th Cir. 2004) (explaining that "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record").

Furthermore, I find Mrs. Wixom's second argument regarding Dr. Higginbotham's evaluation unpersuasive as well. Dr. Higginbotham compiled his evaluation of Mr. Wixom on March 25, 2015 and on April 29, 2015 (both roughly a year and a half after Mr. Wixom's date last insured). R. 354–367. He found, based on a physical evaluation of Mr. Wixom on March 25, 2015 (apparently Dr. Higginbotham's first and only) and Mr. Wixom's medical history, that Mr. Wixom "was unable to attend to a 40-hour week and 8-hour day from at least May 2012 when he had the repeat rhizotomies." R. 27, 354–367.

After examining Dr. Higginbotham's evaluation in depth, the ALJ assigned this opinion "no weight" in her decision. R. 27. Mrs. Wixom claims this was in error. However, because the ALJ gave specific and legitimate reasons for this decision after assessing all six factors from 20 C.F.R. §§ 404.1527 and 416.927 that an ALJ is required to consider in "choosing to disregard [an] opinion entirely," I find her decision was proper. *See Maiorano v. Astrue*, 930 F. Supp. 2d 1240, 1246 (D. Colo. 2013) (affirming an ALJ's decision to assign an opinion "no weight" and explaining that to properly do so the ALJ must consider the factors in 20 C.F.R. §§ 404.1527 and 416.927, and that "the ALJ must 'give specific, legitimate reasons' for choosing to disregard the opinion entirely.") (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003)); 20 C.F.R. §§ 404.1527(c) and 416.927 (listing the factors an ALJ must assess to weigh medical opinions, including (1) the doctor's examining relationship, (2) the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors).

First, the ALJ properly questioned Dr. Higginbotham's medical evaluation because it was both "retrospective" in nature and conducted by a physician who had not personally evaluated Mr. Wixom during the time he actually claimed a disability. *See* R. 27; 20 C.F.R. §§ 404.1527(c)(1), (2). She also correctly explained that Dr. Higginbotham's opinion was undermined by other evidence in both the record and his own evaluation. R. 27; 20 C.F.R. §§ 404.1527(c)(3), (4). For instance, while Dr. Higginbotham found that Mr. Wixom could not "reach overhead or use either hand for repetitive activity greater than 20 minutes at a time and up to two hours intermittently" in May of 2012, see R. 366, Mr. Wixom's medical history, which Dr. Higginbotham referenced in his evaluation, showed that Mr. Wixom did not first complain of any neck, shoulder, or arm symptoms until roughly a year after that date. R. 27, 263–64. Similarly, while Dr. Higginbotham found that Mr. Wixom had certain "functional limitations" dating back to May of 2012, see R. 366, other evidence contradicted that assessment and showed that around that time the pain in Mr. Wixom's right leg had improved, R. 278-79; that although he had a "slow gait," Mr. Wixom could stand on his heels and toes; and that he showed excellent "(5/5) motor strength[,]" R. 227.

Finally, the ALJ properly noted that while Dr. Higginbotham was a doctor of osteopathic medicine ("D.O."), other factors, including Dr. Higginbotham's failure to connect the dots by accompanying his findings with any detailed narration, weighed against giving Dr. Higginbotham's evaluation any weight. R. 27; 20 C.F.R. §§ 404.1527(c)(5), (6). Accordingly,

the Court finds that substantial evidence supports the ALJ's decision to question Dr. Higginbotham's opinion and to assign it "no weight."[2] *See Maiorano*, 930 F. Supp. 2d at 1246.

### B. The ALJ's Credibility Determination of Mr. Wixom.

Next, Mrs. Wixom contends that the ALJ's improperly assessed Mr. Wixom's credibility regarding his symptoms. ECF No. 14 at 10–12. Specifically, Mrs. Wixom takes issue with the ALJ's assumption that Mr. Wixom was "apparently not reporting his income [in 2010] for tax, Medicaid or administration purposes" based on the fact that Mr. Wixom did not report income after 2008 but was engaging in property management in August of 2010. *Id.* at 10 (citing R. 26). Mrs. Wixom explains that the couple had been maintaining their rental property in Wisconsin, but that doing so had not been earning them any money. ECF No. 14 at 11. Thus, Mr. Wixom did not fail to report income and the ALJ was wrong to make that leap. *See id.* Mrs. Wixom argues this mistake warrants reversal. I disagree.

First, I find that the ALJ's incorrect assumption does not undermine her determination because it was not even relevant to her conclusion. *See* R. 26. That is, the ALJ referenced this fact about Mr. Wixom's property management because it showed, by the ALJ's estimation, that Mr. Wixom was *physically* more active than alleged. *See* R. 26 ("While he apparently was not reporting his income from such activities for tax, Medicaid, or Administration purposes, *all of this appears he was more active than alleged* during the period under review. Despite claiming extreme limitations in his exertional capacities and stamina, the record provides no consistent and convincing evidence over time, and the undersigned cannot find the claimant's . . . alleged

---

[2] Dr. Higginbotham even hedged his conclusion about Mr. Wixom's capabilities. *See* R. 367 ("[Mr. Wixom] *likely* was unable to attend to 40-hour-week, 8-hour-day employ from at least May of 2012 when he had his repeat facet rhizotomies.") (Emphasis added).

9

limitations . . . to be well supported.") (Emphasis added). Whether or not Mr. Wixom actually failed to report his income was thus of no moment in the ALJ's analysis. R. 26.

In any event, I find that the ALJ's determination that Mr. Wixom lacked credibility regarding his symptoms is supported by substantial evidence. *See Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990) ("Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence."). As defendant points out, see ECF No. 15 at 10, this evidence includes: "the significant gaps in treatment during the period Mr. Wixom first alleged he was disabled[,]" see R. 63–64; "evidence that many of his symptoms responded to treatment[,]" see, e.g., R. 264; "the relatively minimal clinical examinations findings[,]" see, e.g., R. 227; "the lack of diagnostic evidence to support Mr. Wixom's right-sided neck and shoulder complaints[,]" see R. 264; "the absence of diagnostic evidence to support leg symptoms[,]" see R. 278–79; "the physician opinions of record[,]" see R. 227–28; "and the fact that Mr. Wixom stopped working for reasons unrelated to his impairments[,]" see R. 41. Thus, I find no error with the ALJ's credibility determination.

### C. Additional Evidence.

Finally, Mrs. Wixom argues that the Appeals Council improperly rejected qualifying additional evidence. ECF No. 14 at 12. Mrs. Wixom refers specifically to two documents she submitted to the Appeals Council after the ALJ's decision: (1) an affidavit, submitted to the Appeals Council on October 5, 2015, R. 7–9; and (2) Dr. Ross's signed letter, submitted on September 25, 2015, R. 10–12. In its denial of Mrs. Wixom's initial appeal, the Appeals Council rejected both pieces of evidence as immaterial. R. 2. The Council explained that these

documents pertained to a time period after Mr. Wixom's date last insured (December 31, 2013). R. 2. Thus, they would not alter the ALJ's decision. R. 2. Mrs. Wixom argues the Appeals Council erred in that conclusion. ECF No. 17 at 2. While I agree with Mrs. Wixom that these documents do reference a time period before Mr. Wixom's date last insured, I nonetheless find, like the Appeals Council ultimately did, that they are immaterial.

Before addressing the materiality of this evidence, I note that under Tenth Circuit precedent, if the Appeals Council rejects additional evidence submitted to it, a reviewing court subjects that decision to *de novo* review. *See Krauser v. Astrue*, 638 F.3d 1324,1328–29 (10th Cir. 2011); *see also Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004) (discussing 20 C.F.R. §§ 404.970(b), 416.1470(b)); *Contreras v. Colvin*, No. 13-CV-03310-KMT, 2015 WL 1509687, at *7 (D. Colo. Mar. 30, 2015) (explaining that when the Appeals Council considers new evidence but finds that it does not relate to the relevant time period, "[t]his amounts to a rejection of new evidence"). Thus, I decide for myself whether the evidence Mrs. Wixom submitted to the Appeals Council "qualifies" as evidence that should have entered the record. *Krauser*, 638 F.3d at 1328. To make that determination, I decide whether the evidence is: "(1) new, (2) material, and (3) related to the period on or before the date of the ALJ's decision." *See id*. If I find the evidence meets all three criteria, I must issue a remand. *See Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003). However, if any of the three criteria are missing, no remand is warranted. *See, e.g.*, *Cdebaca, v. Colvin*, No. 15-CV-02040-RBJ, 2016 WL 6212522, at *4 (D. Colo. Oct. 1, 2016).

Here, I find no remand is warranted because the additional evidence Mrs. Wixom submitted was immaterial. *See Threet*, 353 F.3d at 1191 ("Evidence is material to the

determination of disability if there is a reasonable possibility that it would have changed the outcome.") (Internal quotation marks and brackets omitted).  I begin with Mrs. Wixom's affidavit.  This two-page document simply refutes the ALJ's mistaken conclusion, discussed *supra*, that Mr. Wixom might not have been reporting income he was earning from property management in 2010.  *See* R. 8–9.  While Mrs. Wixom is therefore right that this affidavit references a time period (i.e. 2010) before Mr. Wixom's date last insured (December 31, 2013), her affidavit is nonetheless immaterial because the ALJ's discussion of whether Mr. Wixom actually failed to report income played no role in her credibility determination.  *See supra* Part III.B.  Thus, I find there is no "reasonable possibility" that this evidence "would have changed the outcome" of the ALJ's decision.  *See Threet*, 353 F.3d at 1191.

Similarly, I agree with the Appeals Council's conclusion that Dr. Ross' letter is immaterial and does not therefore qualify as additional evidence.  That letter merely states that Dr. Ross agrees with the underlying opinion of Dr. Higginbotham regarding Mr. Wixom's restrictions "in effect as of May 2012." R. 11.  However, the ALJ gave that underlying opinion from Dr. Higginbotham "no weight" in her decision, R. 27, and for good reason, see *supra* Part III.A.  Thus, I find this evidence is likewise immaterial because there is no "reasonable possibility" that it "would have changed the outcome" of the ALJ's decision either.  *See Threet*, 353 F.3d at 1191.

## ORDER

For the reasons described above, the Court AFFIRMS the Commissioner's decision denying claimant Kenneth M. Wixom's application for Disability Insurance Benefits.

DATED this 22nd day of November, 2016.

13

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge

13